**CV 14 -     6500     ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| T-MOBILE USA, INC.; WESTERN PCS CORPORATION, by its successor in interest T-MOBILE USA, INC.; VOICESTREAM WIRELESS CORPORATION, by its successor in interest T-MOBILE USA, INC.; and METROPCS WIRELESS INC., by its successor in interest T-MOBILE USA, INC.<br><br>Plaintiffs,<br><br>v.<br><br>VISA, INC.; VISA U.S.A., INC.; VISA INTERNATIONAL SERVICE ASSOCIATION; MASTERCARD INCORPORATED; and MASTERCARD INTERNATIONAL INCORPORATED,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs allege the following claims for relief against Defendants Visa, Inc., Visa U.S.A., Inc., and Visa International Service Association (collectively "Visa") and against Defendants MasterCard Incorporated and MasterCard International Incorporated (collectively "MasterCard").

## I. INTRODUCTION

1. Visa is a combination of independently owned and managed member banks and financial institutions, each of which operates as an issuing bank or acquiring bank (or both) in the U.S. markets for credit cards and debit cards. Likewise, MasterCard is a combination of independently owned and managed member banks and financial institutions, each of which operates as an issuing bank or acquiring bank (or both) in the U.S. markets for credit cards and debit cards. There is a significant overlap in the

1

member banks that comprise Visa and MasterCard, such that many banks are members in each. Visa and MasterCard govern and control the member banks, requiring that member banks agree to be bound by certain rules of Visa and MasterCard. These rules unreasonably restrain trade. Visa and MasterCard therefore are combinations in restraint of trade and Visa and MasterCard have entered into agreements with their member banks in restraint of trade, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

2. The vast majority of the member banks in Visa and MasterCard issue payment cards to consumers. These payment cards consist of either debit cards or credit cards, each of which comprises a distinct product market. The relevant geographic market for credit and debit cards in this context is the United States.

3. Issuing banks earn income on credit and debit cards by, among other means, charging interchange fees that are paid by merchants for the privilege of accepting the payment cards. Because issuing banks profit from merchant acceptance of their payment cards, they should compete with one another for merchant acceptance, but the various practices and rules adopted by Visa and MasterCard and agreed to by the member banks limit and, in some cases, eliminate competition among member banks. Such rules and practices include, by way of example and without limitation: the adoption of "default" Interchange Fees, the Honor All Cards rule, the All Outlets Rule, the No Discount Rule and the No Surcharge Rule.

4. Visa and MasterCard and their member banks have substantial market power in the United States in the markets for merchant acceptance of debit cards and credit cards. Visa and MasterCard have maintained that market power despite judicial and legislative efforts to curb their market power over the past 20 years.

5. Plaintiffs paid hundreds of millions of dollars from 2004-2012 in interchange fees to issuing banks that are members of Visa and MasterCard. The

2

unreasonable restraints of trade imposed by Visa and MasterCard have caused substantial competitive injury to Plaintiffs, causing Plaintiffs to pay higher than competitive fees for the privilege of accepting debit and credit cards and resulting in higher costs, as well, for Plaintiffs' customers and subscribers.

## II.  JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1337.

7. Venue is proper in this district because Defendants each reside in, are found in, have agents in, and transact business in this district as provided in 28 U.S.C. § 1391(b) and (c) and in 15 U.S.C. §§ 15 and 22.

8. Each of the Defendants transacted business throughout the United States, including in this district and/or were engaged in an illegal anticompetitive scheme that was directed at and had the intended effect of causing injury to persons residing in, located in or doing business throughout the United States, including in this district.

## III.  THE PARTIES

9. Until approximately 2007, Defendant Visa International Service Association was a non-stock Delaware corporation with its principal place of business in Foster City, California. Defendant Visa U.S.A., Inc. was a member of Visa International Service Association and was also a non-stock Delaware corporation, with its principal place of business in San Francisco, California. Visa U.S.A., Inc.'s members were financial institutions that acted as issuing banks or acquiring banks in the Visa system. In or around October 2007, Defendant Visa, Inc. was created through a corporate reorganization. Defendant Visa, Inc. is a Delaware corporation with its principal place of business in San Francisco, California. The member banks in Visa U.S.A., Inc. became the initial shareholders of Visa, Inc.

3

10. Prior to 2006, Defendant MasterCard Incorporated was a Delaware membership corporation, with its principal place of business in Purchase, New York. Defendant MasterCard International Incorporated was a Delaware membership corporation, consisting of more than 23,000 owner and member banks worldwide. MasterCard International Incorporated was a wholly-owned subsidiary of MasterCard Incorporated. In 2006, MasterCard Incorporated and MasterCard International Incorporated conducted an initial public offering which included issuing ownership shares to MasterCard's member banks. As a result of the IPO, MasterCard Incorporated operates today as a publically-traded Delaware corporation with its principal place of business in Purchase, New York. MasterCard International Incorporated remains MasterCard Incorporated's principal operating subsidiary and does business as MasterCard worldwide.

11. Plaintiff T-Mobile USA, Inc., a Delaware corporation with its principal place of business in Bellevue, Washington, is a wholly-owned subsidiary of T-Mobile US, Inc., a Delaware corporation. Plaintiff Western PCS Corporation was a Delaware corporation with its principal place of business in Bellevue, Washington. In 1998 Western PCS Corporation changed its name to VoiceStream Wireless Corporation. In 1999, VoiceStream Wireless Corporation was merged into VoiceStream Wireless Corporation II, a Washington corporation. In 2000, VoiceStream Wireless Corporation II changed its name to VS Washington Corporation. In 2006, VS Washington Corporation was merged into T-Mobile USA, Inc. As a result of mergers, Plaintiff T-Mobile USA, Inc. is the successor in interest to VoiceStream Wireless Corporation. Plaintiff MetroPCS Wireless, Inc. was a Delaware corporation with its principal place of business in Richardson, Texas. In 2013, T-Mobile USA, Inc. merged with MetroPCS Wireless, Inc. and the resulting company now operates as T-Mobile USA, Inc.

4

## IV. THE MARKETS AND THE RESTRAINTS OF TRADE

12. Two categories of general purpose payment cards have been accepted by merchants in the United States over at least the past 20 years: credit cards and debit cards. Credit cards and debit cards comprise two separate product markets and the United States is the relevant geographic market for each. *See United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 322 (S.D.N.Y. 2001), *affirmed*, 344 F.3d 229 (2d Cir. 2003).

13. Issuing banks are members of the Defendants' networks that receive revenue when a consumer uses one of their payment cards to purchase goods or services from a merchant. Acquiring banks are members of Defendants' networks that acquire purchase transactions from merchants. In exchange for the privilege of accepting the issuing bank's payment cards, the merchant pays a merchant discount fee and an interchange fee. The issuing bank receives the interchange fee and the acquiring bank receives the merchant discount fee.

14. The issuing banks that are members of the Defendants' networks are independently owned and managed businesses. In other aspects of their businesses, member banks compete against one another. Thus, member banks compete with one another to attract card holders by creating payment cards that offer attractive interest rates, annual fees, rewards and other features. *U.S. v. Visa U.S.A., Inc.*, 163 F. Supp. 2d at 334. Although member banks should likewise compete against one another for merchant acceptance of their payment cards, by the anticompetitive rules and practices described herein the Defendants and their member banks have agreed among themselves not to compete for merchant acceptance.

15. Visa and MasterCard set default interchange fees on credit card and debit card transactions that merchants are required to pay to the issuing banks. The default interchange fees eliminate competition and potential competition among issuing banks

for merchant acceptance. The default interchange fees constitute price fixing among competitors.

16. The Honor All Cards Rules require that a merchant that accepts any Visa or MasterCard credit card must accept all such credit cards, no matter which bank issued the card and regardless of the terms, including interchange fees, associated with acceptance of the card. These Rules eliminate competition among banks for acceptance of their payment cards by merchants.

17. The All Outlets Rules require merchants who accept Visa branded or MasterCard branded payment cards at any location to accept those cards at all of their locations. Until 2013, the All Outlets Rules also required merchants that used different trade names in different locations to accept Visa branded or MasterCard branded payment cards at all of their locations. These Rules eliminate competition among banks for acceptance by merchants.

18. The No Discount Rules preclude merchants from offering discounts to customers who use a particular payment card. The No Discount Rules allow discounts to customers who paid with cash and, following settlement of a challenge by the U.S. Department of Justice in 2011, also allowed merchants to offer discounts in limited circumstances. Before and after 2011, however, the No Discount Rules eliminated competition among banks for acceptance by merchants.

19. The No Surcharge Rules prohibit Plaintiffs from imposing a surcharge on consumers for the use of Visa-branded or MasterCard-branded payment cards. This prevents merchants from creating incentives for consumers to use cards that have more attractive terms to the merchant. The No Surcharge Rules limit and eliminate competition among banks for merchant acceptance of payment cards. In early 2013, Defendants altered their No Surcharge Rules to allow surcharges in limited

circumstances, but debit card transactions still may not be surcharged and the no-surcharge rules continue to limit competition for acceptance by merchants.

20. But for the anticompetitive rules and practices described herein, the market for consumer acceptance of payment cards would be significantly more competitive. Among other things, merchants such as the Plaintiffs would have paid (and would continue to pay) significantly lower interchange fees for the benefit of accepting Defendants' payment cards. These anticompetitive rules are not reasonably necessary, including to create efficiencies in the payment card markets. Moreover, there are less restrictive alternative means that would allow Defendants to achieve any claimed efficiencies.

21. Visa and its member banks (including the issuing banks) have market power in the relevant market for merchant acceptance of general purpose credit cards in the United States. *United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 332, 341 (S.D.N.Y. 2001) *affirmed*, 344 F.3d 229 (2d Cir. 2003). Likewise, in *In re Visa Check-Master Money Antitrust Litigation*, 2003 U.S. Dist. Lexis 4965 (E.D.N.Y., 4103), the court reaffirmed Visa's market power in the credit card market.

22. Master Card and its member banks (including the issuing banks) have market power in the relevant market for merchant acceptance of general purpose credit cards in the United States. *United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 332, 341 (S.D.N.Y. 2001) *affirmed*, 344 F.3d 229 (2d Cir. 2003). Likewise, in *In re Visa Check-Master Money Antitrust Litigation*, 2003 U.S. Dist. Lexis 4965 (E.D.N.Y., 4103), the court reaffirmed MasterCard's market power in the credit card market.

23. There are significant barriers to entry into the market for general purpose credit cards. *U.S. v. Visa U.S.A., Inc., supra.* at 341. Defendants' conduct, and particularly the adoption of the anticompetitive rules described herein, demonstrates

Defendants' market power in the credit card markets. Competition or potential competition between Visa and MasterCard does not eliminate the exercise of market power by either Defendant because MasterCard and Visa have adopted parallel rules that limit competition from merchant acceptance.

24. Visa and MasterCard together accounted for roughly 75% of all debit card purchases in 2004 and over 80% as of 2013. Both Visa, with its member banks, and MasterCard, with its member banks, have market power in the market for merchant acceptance of debit cards.

25. The market power of Defendants and their respective member banks in the market for merchant acceptance of debit cards is demonstrated by Defendants' conduct, including the adoption of the anticompetitive rules described herein. Competition or potential competition between Visa and MasterCard does not eliminate the exercise of market power by either Defendant because MasterCard and Visa have adopted parallel rules that limit competition from merchant acceptance.

## V. DEFENDANTS' INITIAL PUBLIC OFFERINGS DID NOT CURE THE RESTRAINTS OF TRADE

26. In 2008, Visa and its member banks changed the ownership structure of Visa through an initial public offering ("IPO"). By way of the IPO, the member banks of Visa partially sold their ownership of Visa and restructured the governance of Visa, but the IPO did not change the fundamental nature of the combination, nor did it eliminate the anticompetitive rules described herein. None of the member banks in Visa took steps to withdraw from the illegal combination that existed prior to the IPO. Indeed, following the IPO, the member banks and Visa continued their illegal and anticompetitive combination that eliminated competition among the issuing banks for merchant

8

acceptance. For example, Visa and its member banks continued to set default interchange fees that eliminated competition among the issuing banks.

27. In 2006, MasterCard Incorporated and MasterCard International Incorporated made an initial public offering of ownership shares to the public and to MasterCard's member banks. The IPO did not change the fundamental nature of the combination, nor did it eliminate the anticompetitive rules described herein. None of the member banks in MasterCard took steps to withdraw from the illegal combination that existed prior to the IPO. Indeed, following the IPO, the member banks and MasterCard continued their illegal and anticompetitive combination that eliminated competition among the issuing banks for merchant acceptance. For example, MasterCard and its member banks continued to set default interchange fees that eliminated competition among the issuing banks.

## VI. PLAINTIFFS HAVE SUFFERED COMPETITIVE INJURY

28. The anticompetitive rules described herein have limited, if not eliminated, competition among issuing banks for merchant acceptance of payment cards. One result of this diminished competition is that interchange fees paid by merchants have been and continue to be set by Defendants at rates that are higher than would exist in a competitive market. From at least 2004 through the date of this Complaint, Plaintiffs have paid these inflated interchange fees, which resulted in increased costs to Plaintiffs and to their subscribers. Plaintiffs have suffered competitive injury from the anticompetitive rules described herein.

## VII. CLAIMS

29. Visa and its member banks are a combination within the meaning of Section 1 of the Sherman Act. The anticompetitive rules described herein are the result

9

of agreements among Visa and the member banks, including issuing banks, to limit or eliminate competition.

30. The anticompetitive rules described herein unreasonably restrain trade, in violation of 15 U.S.C. § 1. Visa and its member banks, including issuing banks, thereby have entered into a combination and agreements that unreasonably restrain trade. The illegal combination and agreements continued after 2008, notwithstanding the Visa IPO.

31. MasterCard and its member banks are a combination within the meaning of Section 1 of the Sherman Act. The anticompetitive rules described herein are the result of agreements among MasterCard and the member banks, including issuing banks, to limit or eliminate competition.

32. The anticompetitive rules described herein unreasonably restrain trade, in violation of 15 U.S.C. § 1. Master Card and its member banks, including issuing banks, have thereby entered into a combination and agreements that unreasonably restrain trade. The illegal combination and agreements continued after 2006, notwithstanding the MasterCard IPO.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A. Judgment in favor of each Plaintiff and against each Defendant, in an amount to be determined at trial including, but not limited to, compensatory damages, treble damages, and pre-judgment and post-judgment interest, as permitted by law;

B. An award of the cost of the suit, including a reasonable attorney's fee; and

C. Such other and further relief as the Court deems just, equitable, and proper.

DATED:  November 4, 2014          By:  _____

                                        Kevin J. Perra
                                        Bradley R. Bobroff
                                        PROSKAUER ROSE LLP
                                        Eleven Times Square
                                        New York, NY 10036
                                        Tel: 212.969.3000
                                        Fax: 212.969.2900
                                        E-mail: kperra@proskauer.com

                                        ***Counsel for Plaintiffs***